IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Gary Steven Scott,                                        )<br>                                                                    )<br>                              Plaintiff,        )<br>                                                                    )<br>       vs.                                                       )<br>                                                                    )<br>Michael McCall, James Dean, Willie        )<br>Davis, Thomas Commander, and Marion)<br>Fedd,                                                          )<br>                                                                    )<br>                              Defendants.  )<br>_____) | Civil Action No. 6:14-2750-RMG-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

   This matter is before the court on the defendant's motion for summary judgment (doc. 23). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the district court.

   On November 10, 2014, the defendant filed a motion for summary judgment (doc. 23). By order filed November 12, 2014, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response in opposition to the motion for summary judgment on November 17, 2014 (doc. 28).

## FACTS PRESENTED

   The plaintiff is currently incarcerated at Perry Correctional Institution in the custody of the South Carolina Department of Corrections ("SCDC"). He is serving a five

year sentence for grand larceny, a twenty year sentence for armed robbery, and a life sentence for murder. In his complaint, the plaintiff alleges that his First and Fourteenth Amendment rights and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") were violated when he did not receive his morning meal prior to sunrise during Ramadan in 2013 at Lee Correctional Institution. The plaintiff claims that eating breakfast after the morning prayer invalidates the fast (doc. 1 at 3-8). The plaintiff further alleges that the defendants' failure to timely serve him breakfast during Ramadan violates SCDC policy PS 10.05, subsections 9 and 9.1 (*id.* at 3-4, 8). He seeks $250,000.00 in damages (*id.* at 9). The plaintiff initially filed this matter in state court in Lee County. According to the defendants (doc. 23-1 at 1), the state court case was dismissed for lack of subject matter jurisdiction.

The plaintiff further alleges that the SCDC took "unfair advantage of the exhaustion requirement by failing to respond to a timely filed grievance thereby preventing the [plaintiff] from exhausting" (doc. 1 at 6). According to the plaintiff, he wrote each of the defendants to complain about the "tardiness of the breakfast trays during Ramadan but to no avail," and he filed a grievance on August 8, 2013, to which he received a reply on October 15, 2013 (*id.* at 2, 4). The response to the grievance stated that the plaintiff had asked to be removed from the Ramadan list (*id.* at 4-5; *see* doc. 1-3 at 2). The plaintiff then filed a Step 2 grievance with supporting affidavits from two inmates who lived in nearby rooms to the plaintiff's; these inmates had asked to be removed from the list, while the plaintiff had not made such a request (doc. 1 at 5). According to the plaintiff, at the time of the filing of his complaint in July 2014, he had received no response to his Step 2 grievance (*id.* at 6).

The defendants answered denying all allegations and asserting various affirmative defenses. Defendant Davis, the Associate Warden at Lee, stated in his affidavit that all inmates participating in Ramadan are listed by the Chaplain's Office, and the list is

provided to Food Services to prepare early meals for these inmates during Ramadan. When Associate Warden Davis received the plaintiff's grievance that he was denied his morning meal prior to morning prayers during Ramadan in 2013, he investigated the matter and determined that the plaintiff was inadvertently left off of the list. Upon initial investigation, it was believed that the plaintiff asked to be removed from the list; the matter was then corrected. Associate Warden Davis further testified that inmates in the Special Management Unit ("SMU"), where the plaintiff was located, are provided this meal unless there is a disturbance or security concern in SMU that would take precedence over delivering those meals. If inmates are removed from general population and placed in SMU, it is their responsibility to notify the Chaplain that they still wish to participate in Ramadan and that they are on the official list (doc. 23-2, Davis aff. ¶¶ 1-5).

Chaplain Cain, the Senior Chaplain at Lee, who is not a defendant in this case, submitted an affidavit stating that inmates in the general population must go to classes to be eligible to participate in Ramadan. If an inmate stops going, the Chaplain's Office takes them off the Ramadan list. If an inmate is placed in SMU and is unable to attend classes, it is his responsibility to notify the Chaplain's Office of his location and desire to participate. According to Chaplain Cain, it is his understanding that the plaintiff was mistakenly taken off of the Ramadan list because the Chaplain's Office was not aware he was in SMU and that the plaintiff still wished to participate (doc. 23-3, Cain aff. ¶¶ 1-4).

Alpha O. Wilson, Food Service Director II at Lee, who is not a defendant in this case, also submitted an affidavit in support of summary judgment. Wilson testified that during the observance of Ramadan, Food Services makes the breakfast meal available for inmates participating in Ramadan prior to the morning prayer. If for some reason an inmate is not on the Ramadan list provided to Food Services by the Chaplain's Office, Food Services would not have the inmate's meal prepared for him. Wilson further testified that all meals were prepared and delivered to those inmates whose names were given to Food

3

Services in 2013 as participating in Ramadan, and no one in Food Services delayed the plaintiff's receipt of his morning meals in 2013 (doc. 23-4, Wilson aff. ¶¶ 1-5).

The plaintiff also named as defendants Michael McCall, Deputy Director of the SCDC; James Dean, Associate Warden; Thomas Commander, Captain; and Marlon Fedd, Food Services Director.

**APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of

4

the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

**Grievance Process**

To the extent the plaintiff alleges that his constitutional rights have been violated because the SCDC has failed to timely respond to his Step 2 grievance, such claim should be dismissed. Prisoners do not have a constitutional right to participate in grievance proceedings. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)).

**RLUIPA**

The plaintiff alleges that the defendants violated the RLUIPA when they failed to serve his morning meal prior to sunrise during Ramadan in 2013  The RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . ." 42 U.S.C. § 2000cc–1(a). However, the RLUIPA does not authorize a private cause of action for money damages against state prison personnel for actions taken in their official or individual capacities, because the statute does not waive the state's sovereign immunity under the Eleventh Amendment. *Sossamon v. Texas*, 131 S.Ct. 1651, 1660 (2011) (official capacity); *Madison v. Virginia*, 474 F.3d 118, 133 (4th Cir.2006) (same); *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir.2009) (individual capacity). Accordingly, the plaintiff's claim for money damages under the RLUIPA should be dismissed. Moreover, as is the case for claims under Section 1983, a claim for injunctive or declaratory relief under the RLUIPA is moot once a prisoner is transferred to another facility. *See Rendleman*, 569 F.3d at 186. The plaintiff was an inmate at Lee at the time of the incidents alleged in his complaint, and he is now an inmate at Perry. Because the plaintiff cannot recover monetary damages under the RLUIPA and

any request for declaratory and injunctive relief is moot, summary judgment should be granted on the plaintiff's claim for violation of the RLUIPA.

### Section 1983

The plaintiff further alleges that the defendants violated his First Amendment right to practice his religion (Islam) by failing to serve his morning meal prior to sunrise during Ramadan in 2013. As the SCDC is a department of the State of South Carolina, and the individual defendants, as employees of the SCDC, are agents or employees of the State of South Carolina when acting in their official capacities, the defendants are not "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."). A state cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). The State of South Carolina has not consented to be sued in this case. S.C. Code Ann. § 15–78–20(e). As an arm of the State, the defendants are immune from suit under the Eleventh Amendment. Accordingly, the undersigned recommends that plaintiff's claims against the defendants in their official capacities be dismissed.

Furthermore, the defendants are entitled to qualified immunity as to the plaintiff's claims for money damages against them in their individual capacities for violation of his constitutional rights. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, a district court must determine whether a plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, whether the particular right was clearly established at the time of the alleged violation. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1865-66 (2014) (per

curiam). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A claim that prison officials have failed to follow their own policies or procedures, standing alone, generally does not state a constitutional claim. *Keeler v. Pea*, 782 F.Supp. 42, 44 (D.S.C. 1992) (holding violations of prison policies that fail to reach the level of a constitutional violation are not actionable under § 1983). Furthermore, the plaintiff's free exercise claim under the First Amendment fails because he cannot establish that the defendants intentionally violated his constitutional rights. *See Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) (only intentional conduct is actionable under the Free Exercise Clause). Here, viewing the evidence in a light most favorable to the plaintiff, the defendants at most acted negligently by taking the plaintiff off of the Ramadan list; there is no evidence in the record that the omission was deliberate. "[N]egligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause." *Id.* As the plaintiff has failed to show that the defendants intentionally violated his First Amendment rights, the defendants are entitled to qualified immunity in their individual capacities.

***Respondeat Superior***

To the extent the plaintiff seeks to hold those defendants with supervisory duties liable for the actions of other employees, the plaintiff's claims fail. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("Section 1983 will not support a claim based on a *respondeat superior* theory of liability.") (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); and *Vinnedge v. Gibbs*, 550 F.2d 926, 927–29 (4th Cir. 1977). "Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (rejecting an argument that

government officials can be held liable because they merely had knowledge of or acquiesced in a subordinate's misconduct). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Here, the plaintiff has not alleged facts that would impose supervisory liability on the defendants.

***State Law Claims***

Having found that the defendants are entitled to summary judgment regarding the plaintiff's constitutional and federal statutory claims, it is recommended that the court decline to exercise supplemental jurisdiction over any claims for relief construed by the court to be asserted pursuant to state law. *See* 28 U.S.C. § 1367(c)(3).

## CONCLUSION AND RECOMMENDATION

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motion for summary judgment (doc. 23) be granted. The attention of the parties is directed to the notice on the next page.

s/ Kevin F. McDonald
United States Magistrate Judge

March 25, 2015
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4$_{th}$ Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 300 East Washington Street
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).